---

## In re FINCH'S WILL.

(Supreme Court, Appellate Division, Third Department. November 14, 1906.)

WILLS—TESTAMENTARY CAPACITY—UNDUE INFLUENCE—FINDINGS BY SURROGATE—DOUBT AS TO CORRECTNESS—SUBMISSION TO JURY.

    On an appeal from a surrogate's refusal to admit a will to probate, evidence examined, and *held* to raise doubt as to the correctness of conclusions of the surrogate in findings as to testator's testamentary capacity, and undue influence, requiring a reversal of his decree and submission of such questions to a jury.

Appeal from Surrogate's Court, Warren ·County.

Application for probate of the will of George R. Finch, deceased. From a decree of the surrogate denying the probate, Helen E. Foulds and others, proponents, and Harriet E. Finch and others, as legatees and devisees, appeal. Reversed, and issues ordered to be tried by jury at Trial Term of Supreme Court.

    George R. Finch died on the 12th day of January, 1906. He left a widow, Harriet E. Finch, but no children. His next of kin are his sister, Helen E. Foulds, and a brother, Jeremiah T. Finch. This brother was not remembered in the will, and successfully contested its probate before the surrogate.

    In the first paragraph of the proposed will the testator's debts are directed to be paid. In the second paragraph the residence and its equipments are given to his wife, Harriet E. Finch, so long as she shall remain unmarried and his widow. In the third paragraph an annuity of $25,000 is given to his said wife as long as she shall remain unmarried. In the fourth paragraph various legacies, amounting to about $18,000, are given to various persons. In

the fifth paragraph certain wild and forest land of the value of about $30,000 is given to John Anderson, Jr., Albert Newcomb, and George N. Ostrander. Certain other wild and forest land is directed to be conveyed to Finch, Pruyn & Co. upon payment of taxes. In the sixth paragraph Mrs. Thomas H. Foulds and George N. Ostrander are named as trustees of the will. In the seventh paragraph, upon the death or remarriage of his wife, his property not otherwise disposed of is given "to my said sister, Mrs. Thomas H. Foulds, and to my friend, George N. Ostrander, in fee absolute." In the eighth paragraph is given a power to sell and convey real estate. In the ninth paragraph the provisions for his widow are stated to be in lieu of dower. In the tenth paragraph the trustees are directed after the death or remarriage of the widow to assign to John Anderson, Jr., and Albert Newcomb, if they be alive, each "fifty thousand ($50,000) dollars of the common stock of Finch, Pruyn & Company." George N. Underwood, Mrs. Thomas H. Foulds, and George N. Ostrander were then named as executors of his will. The execution of the will was witnessed by Maude Bacon Curtis, residing at Glens Falls, and Sherwood La Fevre, also residing at Glens Falls. The estate amounted to about $600,000. The surrogate has held in effect that at the time of the execution of the alleged last will George R. Finch was not of sound and disposing mind; secondly, that the proponents have failed to prove that the will was executed without undue influence on the part of George N. Ostrander, who drew the will. From the decree refusing probate, this appeal has been taken.

Argued before PARKER, P. J., and SMITH, CHESTER, KELLOGG, and COCHRANE, JJ.

King & Angell, for appellants Helen E. Foulds, George F. Underwood, and George N. Ostrander, executors, etc., proponents.

Edward M. Angell, for appellants Harriet E. Finch, Helen E. Foulds, and George N. Ostrander, individually.

William L. Kiley, for appellants Anderson and Newcomb.

Edgar T. Brackett, of counsel, for all appellants.

Kellogg & Barker, for respondent.

SMITH, J. In Matter of Warnock, 103 App. Div. 62, 92 N. Y. Supp. 642, this court has held:

"The determining rule for the disposition of these cases is thus expressed in the headnote of Matter of Tompkins, 69 App. Div. 474, 74 N. Y. Supp. 1002: 'Where, on an appeal to the Appellate Division from a decree of the Surrogate's Court, made in a proceeding for the probate of a will, it appears that the disposition which should be made of the questions of fact presented by the evidence given is not free from doubt, and the result reached in the Surrogate's Court is not entirely satisfactory, the Appellate Division will send the case to a Trial Term for a jury trial.'"

Upon an appeal from a judgment of the Supreme Court the Appellate Division is not authorized to reverse upon the ground that the judges sitting would have otherwise decided if sitting at Special or Trial Term. Upon such an appeal, to authorize a reversal upon the facts, the judgment must be so far against the weight of evidence as to indicate prejudice or bias upon the part of the judge or jury making the determination appealed from. Upon this appeal, however, the Appellate Division must be satisfied with the decision reached, and if doubt exists as to the conclusion which the surrogate has drawn from the evidence, and the Appellate Court is of opinion that the determination of the jury should fairly be taken upon the issues, the decree will be reversed and the questions sent to a jury for their determination.

This estate is a large one. The legatees Anderson and Newcomb are interested, to the extent of $50,000, that their legacies shall not be cut off by reason of any fault on the part of Ostrander. I cannot see that either the widow or the sister can have a material interest as to whether the will is proven or not proven. If this property passed as intestate property, the widow would get absolutely about $250,000 from the personal estate, in addition to her interest in the real estate. This might well be claimed to be a better interest than the estate given to her by the will, which is to absolutely cease upon her death or re- marriage. The sister would at once get a quarter interest in the es- tate, amounting to about $150,000. Notwithstanding that the interest of the widow and the sister might well be deemed as great to defeat the will as to sustain it, it is a fact, not without significance, that they are both here approving of this will and seeking to sustain it as the intelligent expression of the wishes of George R. Finch as to the dis- position of his property.

The two material questions to be reviewed upon this appeal are, first, whether at the time of the execution of the alleged will George R. Finch had a disposing mind; secondly, whether the will was ob- tained by undue influence exercised upon the deceased by George N. Ostrander, the attorney who drew the will.

Discussing these questions in the inverse order stated, the contend- ing counsel differ little as to the rule of law by which they are to be determined. Where a will is drawn by one in a confidential relation, as an attorney, somewhat more is required than mere proof of the execution of the will according to the form of law. Confidential rela- tionship existing presents large opportunity for fraud and imposition, and for that reason it has been justly held that the courts look with suspicion upon instruments so executed, and the courts are jealous to protect the rights of the lawful heirs as against any undue influence that may have prompted the execution of the instrument. A will so executed for the benefit of an attorney who drew the will was from public policy void under the civil law. Under our law, however, the rule is changed, and while the will does not become void by reason of that fact the court requires clear proof that the party understood the contents of the will, and that the will expresses the uninfluenced inten- tion of the testator.

Did the deceased know the contents of this will? The proof is fairly convincing that after the will was first drawn it was given to the de- ceased, who read it over. He was seen with a paper resembling the will, with his glasses on, reading the same. He directed an addition made to the will, which direction could not have been given without a knowledge of its contents at the time. It is not specifically proven that after this alteration or correction was made the deceased again read the will. The respondent contends that the will, as first presented to the deceased, might have contained only the first six paragraphs, and the provision thereafter inserted for the benefit of Ostrander might not have been known to him at the time of the execution of the will. While this is possible, it is hardly probable. If the will when it was presented to him and examined contained only the six paragraphs, it would have

been in no way complete. The will when examined may fairly be presumed to have been one complete in itself, and the inference is not by any means forced that the tenth paragraph is the one that was afterwards inserted by direction of the testator. As to this tenth paragraph, which contained no legacy in behalf of the attorney, it is not necessary to make specific proof that that paragraph was read by the testator. As to that paragraph, it may be fairly implied that the testator knew its contents by reason of the fact of his signing the will after it was inserted. It is, we think, an unwarranted assumption that this will did not contain the legacy to Ostrander when it was read by the deceased, and that the deceased had not full knowledge of its contents at the time that he signed it.

As to the charge of the exercise of undue influence, there is nothing to sustain such a charge, except the fact of the insertion of the beneficial provision in the will. As against such inference are arrayed all the circumstances under which the will was executed. No one was specifically excluded from the room when directions were given for the preparation of the will. The will was executed only two hours before the operation was performed during which he died. The necessity for the operation had already been determined upon. The deceased was somewhat deaf. The attorney could hardly have used persuasion to have his name included in the will without detection by persons passing in and out of the room and through the room as preparations were being made for the operation. An attorney would have been bold, indeed, under such circumstances to have attempted to influence the making of a will for his own benefit. Again, there was no effort on the part of Ostrander to keep the possession of the will after its execution. Had he fraudulently inserted his name as legatee and devisee, he would not have asked the deceased what he should do with the will after its execution. He would have taken possession and the will never would have been seen if Finch had recovered. As it was, he handed it over to the confidential clerk of the deceased, where discovery of any fraud would have been inevitable. Moreover, the relations between Finch and Ostrander were unusually close. While the intimacy of that relationship emphasizes the confidential relations existing and the necessity of a jealous care on the part of the court to see to it that the instrument expresses the exact intention of the testator, it also establishes substantial reason for the inclusion of the name of the attorney as a substantial beneficiary in the will. The widow was only about 40 years of age, about the age of the attorney. It is doubtful if the residuary clause would become effective during the life of the attorney, although it is not impossible that the residuary legatees would have, prior to the death or remarriage of the widow, benefit of the excess of income over $25,000 given to the widow during life. But the most convincing answer to the claim of undue influence on the part of Ostrander would seem to lie in the character of the man himself, whom he is charged with influencing. The deceased was prominent as a man of extensive business connections and as a man of force and character. He was president of Finch, Pruyn & Co., a corporation engaged in the manufacture of lumber and paper, and was either director or stock-

holder in the Imperial Wall Paper Company, Schroon River Pulp & Paper Company, the Racquette Falls Land Company, the National Bank of Glens Falls, and several other corporations. He was prominent in politics, having been candidate for State Treasurer upon the Democratic ticket and a member of the Democratic State Committee. Men of experience in business affairs are not often unduly influenced in the making of wills. It is ordinarily the guileless men who are influenced to forget the claims of kindred. His brother, the contestant here, was in need of nothing. His property was equal in amount to that of the deceased. There is some evidence of strained family relations, which, if true, would furnish a motive for the deceased to omit his name from his will. It is hard to believe that the deceased made a will expressing other than his deliberate wish, unless he was so far unbalanced by his sickness as to be incompetent to make a will at all, which will be discussed further on in this opinion.

The attorney who drew this will in his favor has been criticised for not calling in another attorney to draw the will. It has been noticed that about 8 o'clock he went into an attorney's office and got some blank wills, upon one of which he afterwards drew the will of the deceased. If he, at that time, knew that he was to be one of the prominent legatees, his act in himself drawing up the will could hardly be characterized with condemnation too strong. If he did not know at that time that he was to be one of the principal beneficiaries, it may well be that the urgency was so great and the time so short that he should deem it expedient and necessary to himself draw the will rather than call in a third party. He cannot be commended for failing to have some other party present made acquainted with the fact that this will was to a substantial degree in his favor; but, after all, the ultimate question to be determined is whether the action of the attorney in procuring the execution of this will was a fraudulent act, improperly influencing the mind of the testator. And while all these facts are material to be considered upon this question we are not entirely satisfied under all the circumstances of the case that fraud was established.

The remaining question is as to the competency of this testator to make a will at the time the will was made. I do not intend to review in this opinion in detail the testimony upon that question. It would seem to me sufficient to entitle the proponents of the will to the verdict of a jury that neither a physician or a layman who saw him upon that last morning has given evidence to the effect that he was not competent to make a will, or has given evidence of a single act upon his part which would indicate a lack of full appreciation of what he was doing. After the making of this will he checked up a list of taxes handed him by Ostrander, and wrote upon them a direction to his clerk to make out a note and pay the same. All his declarations made upon that morning, both before and after the execution of the will, would seem to indicate a clear mind and the full appreciation of his situation. It is true that upon hypothetical questions expert physicians have sworn that the man was incompetent to make the will. That class of evidence is most unsatisfactory, however, and in view of what was said and done upon that morning by the deceased we have no hesitation in saying that we are not

entirely satisfied with the conclusion of the learned surrogate upon the question of his competency to make a will or at least that we would be better satisfied with the conclusion of a jury upon the two questions here involved.

The decree of the surrogate reversed upon the facts, and the issues ordered to be tried by a jury at the next Trial Term of the Supreme Court in Warren county, with costs of the appeal to abide the event of the new trial. The material questions to be submitted to the jury upon such trial are:

First. At the time of the making of the alleged will did George R. Finch understand the nature and extent of his property and the nature and quality of the claims to his bounty of his brother and any other persons?

Second. Was the will procured through undue influence exercised upon George R. Finch by George N. Ostrander, named as a legatee in said will? All concur.